■ In the Matter of the Custody of REBECCA B., an Infant. RENEE B., Respondent; MICHAEL B., Appellant. [611 NYS2d 831] —Order, Family Court, New York County (George L. Jurow, J.), dated May 8, 1992, which, *inter alia,* denied the motion of appellant father for a transfer of the sole legal custody of his daughter from her mother to him, unanimously modified on the law and the facts, and in the exercise of discretion, to the extent of granting the transfer of the sole legal custody to appellant, with liberal visitation rights to respondent mother, and otherwise, insofar as consistent with such transfer of sole legal custody to appellant, in all respects otherwise affirmed, without costs or disbursements. It is ordered that any further proceedings in the matter in the Family Court be held before another Judge.

The Clinical Director of the Family Court's Mental Health Service was qualified to testify as an expert in clinical psychology. He had met with the child on three occasions for a total of three hours and with her and each parent for about forty minutes. He also had met with each parent separately for about seven hours. He concluded that the child's best interests required the transfer of custody to appellant with liberal visitation for the mother noting that appellant was a much less detrimental influence on the child than was the mother, that he was less likely to cause long-term harm to her than was the mother that the child perceived him as more loving than her mother, and that she had a more profound bond with him. The child made it clear repeatedly to the Clinical Director that she would prefer to live with her father; the mother's spanking, slapping, and locking of the child in her room was difficult for the child to comprehend. Another psychiatrist also recommended a change in custody, for the "main reason" that the mother tried so to exclude appellant from the child's life; he believed that appellant as the custodial parent would give better access to the noncustodial parent. From age seven to

eight the child had slept with her father on overnight visits, but there had been no suggestion of any improper action by appellant and the practice had ceased. The psychiatrist had found nothing "intrinsically detrimental" in the arrangement. A supervising social worker employed by the Legal Aid Society also recommended that custody be transferred to appellant.

A psychiatrist retained by the mother testified that custody should be continued with the mother. However, he had spoken only with the mother and with people to whom he was referred by the mother and not to the child or appellant.

The law guardian, believing that appellant was more likely to foster the noncustodial parent's relationship, concluded that the transfer of custody to him was in the best interest of the child.

The trial court denied appellant's motion to transfer custody to him, terming the testimony of the Clinical Director, the first mentioned psychiatrist and the social worker not credible. They were, however, the only experts making a recommendation as to custody who had spoken to all three family members, but the trial court repeatedly described their testimony as "flawed." By discounting the testimony of these three witnesses, the trial court essentially left itself without expert testimony on the child's preferences and the quality of her relationships with her parents. Since the mother's psychiatrist had not interviewed the child or appellant, moreover, little weight should be accorded to his recommendation that custody be awarded to the mother (Walden v Walden, 112 AD2d 1035, 1037; see, Alan G. v Joan G., 104 AD2d 147, 154).

"Any court in considering questions of child custody must make every effort to determine 'what is for the best interest of the child, and what will best promote its welfare and happiness' " (Eschbach v Eschbach, 56 NY2d 167, 171; Domestic Relations Law § 70). Primary among the circumstances to be considered in determining that best interest is "the quality of the home environment and the parental guidance the custodial parent provides for the child" (Eschbach v Eschbach, supra, at 172). The desires of the child, though not controlling, are some indication of what is in the child's best interest (supra, at 173). Appellant had addressed these issues effectively; petitioner had not.

A determination had been made by Family Court in 1987 that the mother should have custody. The burden was thus on appellant to demonstrate a substantial change of circum-

stances to justify a change in custody. He did so in 1991 by showing the preference of the child—then seven years of age —to live with him, by showing the bond which had grown between them, by showing petitioner's rather punitive disciplining of the child, which would over time have a deleterious effect on the child, and especially by his showing of petitioner's efforts to exclude him from the child's life.

We must respect the advantage of the Trial Judge in observing the witnesses, but the authority of this Court in matters of custody is as broad as that of the trial court *(Matter of Louise E. S. v W. Stephen S.,* 64 NY2d 946, 947). It always comes down, however, to the best interests of the child and the ability of the parents "to provide for the child's emotional and intellectual development, the quality of the home environment and the parental guidance provided" *(supra,* at 947). The psychiatrist, testifying on behalf of petitioner, said of her: "She is a somewhat temperamental lady who has a temper, and it would be better if she kept her mouth shut more and didn't get into fights with her former husband and her child, but that's normal within the context of this kind of situation." This is not a severe indictment of a person, but it does support other testimony that petitioner tends to be short-tempered and punitive with her daughter and the inference therefrom that the child is being harmed. There has been no showing, on the other hand, that appellant despite his social isolation, tends to be other than helpful, patient, and constructive in his relationship with his daughter.

It has been shown that petitioner attempts to exclude appellant from the child's life. The Clinical Director and the psychiatrist who met with all concerned believe that, if awarded custody, she will continue to do so. Such acts are "so inconsistent with the best interests of the children as to, per se, raise a strong probability that the mother is unfit to act as custodial parent" *(Entwistle v Entwistle,* 61 AD2d 380, 384-385, *appeal dismissed* 44 NY2d 851; *see, Daghir v Daghir,* 82 AD2d 191, 194, *affd* 56 NY2d 938). In *Janecka v Franklin* (150 AD2d 755, 757), custody was granted to the father, and the Court noted that the mother's anger and hostility toward him "rendered her less fit as the custodial parent, since her attitude would substantially interfere with her ability to place the needs of the children before her own in fostering a continued relationship with the noncustodial parent."

This Court finds the testimony of those experts favoring custody of the child to appellant convincing. The trial court

found the Clinical Director's diagnosis that petitioner was "delusional" in her perception of appellant "completely incredible." But that diagnosis was supererogatory and not essential to his conclusions. As has been noted, this Court gives little weight to the testimony of the petitioner's retained psychiatrist, based as it was on meetings only with petitioner, individuals selected by her, and *some* of her therapists.

The trial court's custody award lacked a sound and substantial basis in the record and should not be allowed to stand *(see, Alan G. v Joan G.,* 104 AD2d 147, 154, *supra).* Concur—Sullivan, J. P., Asch, Rubin and Nardelli, JJ.